JOHN DUNBAR, PLAINTIFF IN ERROR, V. B. B. BRIGGS, DEFENDANT IN ERROR.

1. **Evidence:** SUFFICIENCY OF. When, on proceedings in error, the evidence is found to be clearly insufficient to support the verdict, a new trial will be ordered. Evidence in this case examined and found to fall within this rule.

2. **Opinion of Witness.** A witness who had answered that he knew *only a portion* of a lot of horses, was asked to give his opinion of the value of the entire lot. *Held*, That he was not qualified to answer the question.

3. **Circumstantial Evidence.** Circumstances having a tendency to establish a fact in dispute, *Held*, Admissible in evidence.

4. **Instruction to Jury.** The want of precision of expression in charging a jury is not a sufficient ground for setting aside the verdict where there is no reason to believe they were misled by it.

ERROR to the district court for Gage county. It was a suit upon a promissory note, for $900.00, given by Dunbar, for thirty-nine head of Texas ponies, dated July 28th, 1879, and due ninety days after date. The Texas ponies for which the note was given were bought of Briggs, and the note made payable to the order of Briggs. The answer admits the making and delivery of the note to Briggs, and sets up as a defense, that the note was given for the purchase price of thirty-nine head of Texas horses, and that Briggs knew at the time of said sale the Texas horses so bought were to be turned in with a large number of other horses, owned at that time by Dunbar, which horses were sound and free from disease. That Briggs warranted the Texas horses bought of him, and for which the note was given, sound and free from disease, and that Dunbar gave his note for Texas horses, and purchased the same on the faith of said warranty and guarantee that said horses were sound. That said horses were in fact unsound and diseased at the time of said purchase, and were in fact diseased with the mange or Texas itch. That Dunbar, relying upon the warranty that said horses were sound, turned said Texas ponies or horses in with his herd, and they communicated the disease to his herd of American horses, and he was damaged thereby in the sum of $10,000.00. These Texas horses, bought of Briggs, all died of the mange or

Texas itch, and one hundred head of other horses in the herd took the disease and died. To this answer there was a reply. The case was tried in the Gage county district court, before WEAVER, J., and a jury. The verdict of the jury was in favor of the plaintiff below, Briggs, for the amount of the note and interest, and judgment accordingly. The court instructed the jury as follows :

"The plaintiff brings this suit to recover on a promissory note for nine hundred dollars, together with interest on the same since maturity. The execution of the note is admitted by the defendant, Dunbar, so that, unless by reason of the defendant establishing his counter claim, the plaintiff would be entitled to recover the full amount of the nine hundred dollars, together with interest on the same at seven per cent per annum from the time of its maturity."

*O. P. Mason*, for plaintiff in error.

*Bush & Rickards* and *Hurley & Crane*, for defendant in error.

LAKE, CH. J.

We do not care to refer at length to the voluminous evidence contained in the bill of exceptions, nor would it be of any profit to do so. We have read it with care, and are forced to the conclusion that it does not sustain the finding of the jury upon it. The verdict being clearly against the weight of the evidence, as we have frequently held, is a sufficient reason for giving a new trial.

Dunbar's defense to the note on which he was sued rested upon the establishment of three facts only. These were set out in his answer to the petition, and were, *first*, a warranty by Briggs of the soundness of the horses for which it was given; *second*, that the horses were unsound; and *third*, that by reason of their unsoundness he was damaged.

. As to the fact of a warranty having been given, and that

·it was an inducement to the purchase, there is not room for doubt, if any reliance can be placed on human testimony. It is positively affirmed by the uncontradicted testimony of four witnesses who seem to be wholly uninterested, and entirely credible. It is true that Briggs swore that he had no recollection of having given a warranty, and does not think he did. But this sort of denial, coming, too, as it does from a party so greatly interested, cannot be received as sufficient to counterbalance the testimony there is against it.

Then as to the fact of the horses, or at least some of them, being unsound and afflicted with what was conceded on all hands to have been a very troublesome and dangerous disease, and known as the "mange or Texas itch," the evidence was, as it seems to us, equally conclusive. It is true that Briggs himself, and also several witnesses who had in various ways been connected with the herd for him, testified that so far as they knew, or had observed, the horses were not diseased. But, opposed to this, which at best is not a very satisfactory sort of evidence on the question, there is the testimony of four or five witnesses who swear positively that the signs of this disease were manifest on the very next day, or very soon after the purchase was completed.

One of these witnesses, Ira Waldo, testified that, "These Briggs ponies were taken directly from Emory's yard to the herd. Ed. Blackman had charge of them. I first observed the disease the next day after the herd was taken there from Emory's yard. The horse was of a darkish color, sorrel I called her—some would call her a chestnut sorrel. She came from the Briggs herd, one of those took out the day before. I noticed she looked rough and bad." * * * * * "We caught her right away and examined her, and found there was little bunches on her—little scabs on her neck and back of her fore legs: and she was inclined to bite herself; she seemed to itch, and scratched herself. There was a place where the hair

was a little off; the hair was starting. We noticed it the next day after she was taken there to the herd. Blackman was with me when this was observed. I did not know what it was; I had never seen anything of the disease before. It kept spreading on that horse until she was pretty near hairless, and these little bunches kept coming out until it got all over her, and got on a scale almost like the itch." *    *    * "It finally killed her in the end." This witness further says, that on the return of Dunbar from New York, about four weeks after the purchase, " I told him there was something wrong, and we went out to the herd and caught two or three, I think, and examined them. · They had the Texas itch, or mange. I did not know at the time what to call it. I call it Texas itch now." This testimony is supplemented by that of at least four other witnesses to the same effect substantially, thus making it very clear that the horses must have been infected with the disease of which they all or nearly all died, at the time Briggs sold them; although he may have been, and probably was, wholly unaware of it.

As to the third fact upon which Dunbar rested his defense, viz., that he sustained damage, that follows as a necessary sequence, from the establishment of the other two. That the damage was not merely nominal, but considerable in amount, was abundantly shown by the testimony on that point, to which, however, we need not refer.

It is also claimed that the court erred in certain rulings on the admissibility of testimony. We have examined those points which seem to be most plausible with the following result:

The witness, Waldo, was asked to give his opinion of the value of the entire "lot" of horses that had died. The question was objected to for this, among other reasons, viz., that the witness was "not qualified" to give an opinion on the subject. This was true, for he had just sworn that he knew only "a portion of the horses."

John Dunbar, the plaintiff in error, was asked if he ever knew or heard "of this disease in this county until this herd of horses came here?" This was ruled out. We think the inquiry was certainly proper. Dunbar, as was shown, was a dealer in horses, and must have had considerable acquaintance with their prevailing diseases in that locality. And if it were a fact that this particular ailment, which was shown to be infectious, had not been observed by him or others until the arrival of the Briggs herd, in which it was first discovered, the conclusion that that herd brought it there would not, it seems to us, be unreasonable. This sort of evidence, it is true, is not direct to the point that these horses were diseased when Briggs sold them; but it was admissible, nevertheless, as a circumstance tending in some degree to the establishment of that fact.

The admission of considerable testimony as to the condition and health of the horses, from witnesses having knowledge of them to some extent from the time Briggs purchased them in Texas to the time he sold them, was objected to. We see nothing, however, in the several rulings of the court in this particular that calls for correction.

The first of the instructions given to the jury upon the judge's own motion, is assigned for error. The use of the term counter-claim seems to be the objectionable feature which it possesses. This term was here used for the purpose, evidently, of designating the entire defense made by the answer, rather than as indicating a part of it. And so we think the jury must have understood it. Even if the utmost precision of expression be not observed in an instruction, so long as there is no reason for believing that it misled the jury, the verdict should not be disturbed on that account. And this remark is also applicable to the other instructions complained of, given at the request of the defendant in error. The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.